IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BRENDA BRADY**                                                      **PLAINTIFF**

V.                                         **CIVIL ACTION NO. 2:12cv245-KS-MTP**

**THE TRAVELERS INDEMNITY COMPANY and
ON ASSIGNMENT STAFFING SERVICES, INC.**           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [17] of the Defendants The Travelers Indemnity Company ("Travelers") and On Assignment Staffing Services, Inc. ("On Assignment"). Having considered the submissions of the parties, the record, and the applicable law, the Court finds that the motion should be denied.

## I.  BACKGROUND

This is a suit for bad faith denial of workers' compensation benefits brought by Brenda Brady against her former employer, On Assignment, and its insurer, Travelers. On or about April 3, 2007, Brady sustained certain injuries when she slipped and fell while working in the course and scope of her employment with On Assignment. Brady subsequently asserted a workers' compensation claim against On Assignment and Travelers for her injuries arising out of the accident. In March of 2012, Brady settled her workers' compensation claim against On Assignment and Travelers. The settlement was effected through a Release [17-2] executed by Brady on March 21, 2012, and an Order Approving Final Compromise Settlement and Dismissing Claim with Prejudice [17-1] entered by the Mississippi Workers' Compensation Commission ("MWCC") on March 26, 2012.

On October 24, 2012, Brady filed suit against On Assignment and Travelers in the Circuit Court of Lamar County, Mississippi. (*See* Compl. [17-5].) The Complaint alleges that Brady suffered injury as a result of Travelers' failure to authorize diagnostic exams and failure to approve medical treatment. The Complaint further asserts that the Defendants' willful refusal to provide timely compensation benefits without any legitimate basis for the refusal and willful use of the parties' unequal bargaining positions to force the Plaintiff to accept an inadequate settlement constitute independent torts not subject to the exclusivity provision of the Mississippi Workers' Compensation Act (the "Act").

On December 26, 2012, Travelers removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332. (*See* Notice of Removal [1].) On February 12, 2013, Brady filed an Amended Complaint [5], correcting a misnomer as to the name of On Assignment.

On August 26, 2013, the Defendants filed their Motion for Summary Judgment [17]. The Defendants contend that summary judgment is due in their favor because the MWCC Order and Release each released and discharged all of Brady's claims arising out of her work accident, including the bad faith claim asserted in this lawsuit. Brady contends that she only released her workers' compensation claim against the Defendants. The Court has fully considered the parties' positions and is ready to rule.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

-2-

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial. *Id.* "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

    B.    Analysis

        1.    Whether Brady's Bad Faith Claim Was Discharged by the

**MWCC Order [17-1]**

The Court first addresses the Defendants' argument that the MWCC Order "completely discharges Brady's claims against On Assignment and Travelers in this action." (Defs.' Mem. in Supp. of Mot. for SJ [18] at p. 3.) The Defendants quote the following portions of the MWCC Order in support of this argument:

> IT IS FURTHER ORDERED that upon the payment of the consideration specified herein, employer and carrier shall stand fully, finally and forever discharged of any other or further liability to claimant for the accidental injuries sustained by claimant . . . .
>
> IT IS FURTHER ORDERED that claimant is hereby authorized to execute such release as is required by the employer and carrier to evidence their complete release, acquittance, and discharge herein and that, except for the consideration and only that consideration specified herein, this claim is fully and finally dismissed with prejudice.

(MWCC Order [17-1] at pp. 5-6.) Brady argues that her bad faith claim arises outside the scope of the Act, and thus, the claim remains viable in this action.

The Court finds that Brady has the better side of the argument. The Fifth Circuit has recently examined the nature of a claim for bad faith refusal to pay workers' compensation benefits under Mississippi law.[1] *See Williams v. Liberty Mut. Ins. Co.*, No. 11-60818, 2014 WL 321839 (5th Cir. Jan. 28, 2014). "The action 'derives from the independent and allegedly intentional, tortious conduct of [the insurer] in refusing to pay benefits owing under the . . . Act without an arguable basis therefor.'" *Id.* at *3 (quoting *S. Farm Bureau Cas. Ins. Co. v. Holland*, 469 So. 2d 55, 59 (Miss. 1984)). Also, the exclusivity provision of the Act does not bar a civil action alleging this tort since the

---

[1] The substantive law of Mississippi applies in this diversity action. *See Specialty Rental Tools & Supply, LP v. Shoemaker*, 553 F.3d 415, 419 (5th Cir. 2008).

independent tort is not compensable under the Act.  *See id.* (citations omitted).  The Fifth Circuit summarized Mississippi Supreme Court precedent addressing the claim as follows:

> *Holland* and the cases following it make clear that an insurer's intentional bad-faith refusal to pay worker's compensation timely is an independent tort committed by the insurer outside of the scope of the worker's employment; that it does not arise out of the employee's job-related personal injury or the Workers' Compensation Act; and that it, therefore, is legally distinct from and independent of any claims arising under the Workers' Compensation Act.

*Id.*

The MWCC Order did not discharge Brady's bad faith claim because it is legally distinct from and independent of any of her claims for compensation asserted against Travelers and On Assignment in the MWCC proceeding.  Notwithstanding the provisions of the MWCC Order quoted by the Defendants, the Order also provides that the MWCC "has jurisdiction in this matter and that the case is a proper one for disposition under the provisions of the Mississippi Workers' Compensation Act . . . ."  (MWCC Order [17-1] at p. 1.)  Brady's intentional tort allegations are neither appropriate for disposition nor compensable under the provisions of the Act since they arose outside the scope of her employment.  Thus, the MWCC Order is incapable of extinguishing or discharging the subject bad faith claim, and the Defendants' request for summary judgment based on the MWCC Order is rejected.

### 2. Whether the Release [17-2] Executed by Brady Encompasses Her Bad Faith Claim

Settlement agreements are contracts under Mississippi law.  *See, e.g.*, *Bogy v. Ford Motor Co.*, 824 F. Supp. 2d 733, 739 (S.D. Miss. 2011); *Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1056 (Miss. 2005).  The Court is unaware of any rule

of contract law that renders a settlement agreement void merely because it resolves claims filed in one legal proceeding and additional claims capable of being filed in a separate action. Therefore, the fact that the Release [17-2] arose from and was executed in connection with the settlement of Brady's workers' compensation claim does not negate the possibility of it encompassing her separate and distinct bad faith cause of action. The construction of the Release (the parties' settlement contract) will determine if the claims asserted in this case fall within its scope.

Mississippi courts employ "a three-tiered approach to contract interpretation." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 284 (¶ 13) (Miss. 2005) (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990)). "First, the 'four corners' test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement." *Id.* The court should "read the contract as a *whole*, so as to give effect to all of its clauses." *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (¶ 10) (Miss. 2005) (citation omitted). "When an instrument's substance is determined to be clear or unambiguous, the parties' intent must be effectuated." *Pursue Energy Corp.*, 558 So. 2d at 352. Second, a court should look to "the discretionary canons of contract construction"[2] if the parties' intent remains unclear or illusive after a reading of the instrument. *Austin v. Carpenter*, 3 So. 3d 147, 150 (¶ 15) (Miss. Ct. App. 2009). Third, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Crisler v.*

---

[2] Ambiguities are construed against the party that drafted the agreement. See *Pursue Energy Corp.*, 558 So. 2d at 352-53. Written contract provisions prevail over conflicting printed terms. See *id.* at 353. There are other canons that need not be stated here.

*Crisler*, 963 So. 2d 1248, 1252 (¶ 8) (Miss. Ct. App. 2007) (citation omitted). The Mississippi Supreme Court does not require strict adherence to this step-by-step approach in all circumstances. *See Pursue Energy Corp.*, 558 So. 2d at 351 n.6 ("Indeed, overlapping of steps is not inconceivable."). Further, a court need not go through the entire three steps in the context of a request for summary judgment. *See Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (¶ 20) (Miss. 2012), *cert. denied*, 133 S. Ct. 889 (2013). "If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate." *Id.*; *see also Bogy*, 824 F. Supp. 2d at 739 (finding the interpretation of an ambiguous contract provision to be a jury question).

The Defendants claim that the ensuing language in the Release effected the release and discharge of Brady's bad faith claim:

> I, Brenda Brady, . . . hereinafter referred to as claimant, for the consideration and only the consideration named below, . . . *do hereby release and finally discharge On Assignment*, . . . *Travelers*, . . . *and all others in privity of interest therewith, from any and all claims of every kind and character* arising out of or in any way connected with my claims for injuries allegedly sustained by me on or about April 3, 2007 . . . .

(Release [17-2] at p. 1) (emphasis added). The Defendants further assert that Brady's express reservation of certain claims against other parties in the Release shows that the claims asserted against them in this lawsuit have been discharged. As to the latter contention, the Release provides in pertinent part:

> I do hereby expressly reserve the right to pursue any other claims or causes of action which I might have against *any other parties* who might be responsible for the injuries allegedly received in my accident, and this release shall not be construed so as to diminish or waive any other claims or causes of action I might have against anyone *other than the parties herein released*.

(Release [17-2] at p. 2) (emphasis added).

Brady contends that the language of the Release makes clear that only her workers' compensation claim was released: "This release shall bind myself, my heirs, executors, administrators, or assigns, and I accept this consideration and only this consideration as a full and final settlement of any and all claims I have or may later have against the parties herein released *under the Mississippi Workers' Compensation Act*." (Release [17-2] at p. 1) (emphasis added). Brady alternatively argues that the Release is ambiguous and that she should be allowed to present parol evidence to clear up the ambiguity.

The Court finds that the Release is ambiguous as to whether a claim for bad faith refusal to provide workers' compensation benefits falls within its scope. A contract should be considered ambiguous if "a careful reading of the instrument reveals it to be less than clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout . . . ." *Barnett v. Getty Oil Co.*, 266 So. 2d 581, 586 (Miss. 1972). Furthermore, "contractual provisions are ambiguous where they are susceptible of two or more reasonable interpretations, or where one provision is in direct conflict with another provision, or where terms are unclear or of doubtful meaning." *Reece v. State Farm Fire & Cas. Co.*, 684 F. Supp. 140, 143 (N.D. Miss. 1987) (citing *Dennis v. Searle*, 457 So. 2d 941 (Miss. 1984)). Ambiguity may also arise when contract terms are silent as to certain issues arising between contracting parties. *See Arledge v. Gulf Oil Corp.*, 571 F.2d 1388, 1391 (5th Cir. 1978) (citing Mississippi cases for the proposition that the fact-finder may turn to extrinsic evidence to determine the parties' intent "[w]here a written agreement is silent or ambiguous"); *Tubb v. Monroe County Elec. Power Ass'n*,

912 So. 2d 192, 197 (¶ 17) (Miss. Ct. App. 2005) (providing that an ambiguity exists and the intentions of the parties must be determined where the grant of an easement is silent as to its width); *but cf. Facilities, Inc.*, 908 So. 2d at 115 (¶ 19) ("[S]ilence alone does not necessarily create an ambiguity as a matter of law.").

The above-quoted Release language cited by the Defendants supports a finding that Brady released her bad faith claim against them. The allegation that the Defendants wrongfully refused to provide workers' compensation benefits on a timely basis can be rationally construed to fall within the scope of "all claims of every kind and character arising out of or in any way connected with" Brady's claims for work-related injuries. (Release [17-2] at p. 1.) There could not have been any alleged bad faith denial of workers' compensation benefits in the absence of an underlying claim for benefits. Thus, one can infer that the subject claim is "connected with" Brady's "claims for injuries allegedly sustained . . . on or about April 3, 2007". (Release [17-2] at p. 1.)

Conversely, the contract provision cited by Brady referencing the "Mississippi Workers' Compensation Act" and the following Release provisions appear to tie the settlement to Brady's claim for workers' compensation benefits:

> The purpose of this settlement agreement is to provide the Claimant with funds that will compensate her for future workers compensation benefits, including medical benefits, and that will foreclose the employer/insurer's responsibility for such benefits.
>
> . . . .
>
> This release was authorized in a settlement approved by the final order of the Mississippi Workers' Compensation Commission in Cause No. 0703743-K-4519-A, and I covenant not to assert any further claims against the parties herein released, directly or indirectly, or to attempt to reopen this claim in any manner, all for the consideration and only the consideration named herein.

>       I further state that Donald W. Medley, Esquire is my only and
> exclusive attorney in this matter, and I will pay him the fee authorized by the
> Mississippi Workers' Compensation Commission.

(Release [17-2] at pp. 1, 3, 4.)  As recognized by the Fifth Circuit, a claim for bad faith refusal to provide workers' compensation benefits is legally separate and distinct from any claims arising under the Act.  *See Williams*, 2014 WL 321839, at *3.  Consequently, Brady's release "of any and all claims" against Travelers and On Assignment "under the Mississippi Workers' Compensation Act" does not extend to her bad faith claim. (Release [17-2] at p. 1.)

The preceding contract clauses, standing alone, are not ambiguous.  However, when the provisions are read together, they conflict.  "A contract is ambiguous if it contains conflicting clauses when the contract is read as a whole."  *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1232 (¶ 10), 1233 (¶ 12) (Miss. 2009) (holding that conflicting termination clauses in an agency agreement created an ambiguity).  "The release at issue in the case *sub judice* is not 'clear, definite, explicit, harmonious in all of its provisions, and free from ambiguity throughout."  *Farragut v. Massey*, 612 So. 2d 325, 329 (Miss. 1992) (ruling that a release agreement was ambiguous where competing clauses made the extent of claims released unclear).  The Court is unable to determine from the four corners of the Release if the subject bad faith claim is encompassed within its scope due to ambiguity.  As a result, the interpretation of the Release is a question for the finder of fact.  *See Enniss Family Realty I, LLC v. Schneider Nat'l Carriers, Inc.*, 916 F. Supp. 2d 702, 711 (S.D. Miss. 2013) (denying summary judgment due to the existence of ambiguous contract provisions); *Bogy*, 824 F. Supp. 2d at 739 (same); *Dalton*, 20 So. 3d at 1235 (¶ 19) (reversing the trial court's grant of summary judgment

because the contract was ambiguous).

The fact that Brady's "present attorney reviewed and revised [the Release] prior to execution" fails to support a grant of the Defendants' request for summary judgment. (Defs.' Mem. in Supp. of Mot. for SJ [18] at p. 4.)  The summary judgment record shows that Brady's counsel removed the terms "arising out of the handling of my claims", "the handling of my claims regarding my accident", and "causes of action whatsoever" from the original release prepared by Defendants' counsel.  (Doc. No. [30-2] at p. 1.)  Brady's counsel also inserted the "under the Mississippi Workers' Compensation Act" language into the release.  (*See* Doc. No. [30-2] at p. 1.)  The letter sent by Brady's counsel to the Defendants' counsel accompanying the revised release states that "[w]e made some adjustments allowing for only releasing the comp claim as addressed in the petition to be presented to the Workers' Comp Commission."  (Doc. No. [30-3].)  These circumstances, viewed in Brady's favor, lead to the reasonable inference that she had no intention of releasing her bad faith claim as part of the subject settlement agreement. Nonetheless, the Court will leave to the jury the ultimate determination of whether any extrinsic or parole evidence clarifies the scope of the Release.

The Defendants' argument in rebuttal that Brady failed to include express language in the Release reserving her bad faith claim is not well taken.  (*See* Defs.' Rebuttal in Supp. of Mot. for SJ [33] at ¶¶ 9, 11.)  An objective reading of the Release also fails to reveal any provision expressly, as opposed to inferentially, including the claim under the scope of claims released and extinguished.  It does appear that the Defendants attempted to reference such a claim in the original draft of the agreement. (*See* Doc. No. [30-2] at p. 1.)  However, the absence of any objection from the

-11-

Defendants to the Plaintiff's removal of certain language from the agreement leaves them in no better position than her regarding blameworthiness for the lack of clarity in the scope of claims released.

### III.  CONCLUSION

Jury issues exist with respect to whether the March of 2012 settlement agreement between the Plaintiff and the Defendants encompasses the claims asserted in this action.

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment [17] is denied.

SO ORDERED AND ADJUDGED this the 25th day of February, 2014.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE